**Alan J. LEDDY, Plaintiff,**

v.

**MISSISSIPPI STATE MEDICAL ASSOCIATION, Defendant.**

No. Civ.A. 1:97–CV–279(Br)(R).

United States District Court,
S.D. Mississippi,
Southern Division.

April 21, 1998.

Joe Sam Owen, Owen, Galloway & Clark, Gulfport, MS, for Plaintiff.

Richard M. Edmonson, Edmonson, Biggs, Mozingo & Holbrook, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on the defendant Mississippi State Medical Association ("MSMA")'s motion for summary judgment [**docket entry no. 21–1**]. Having carefully considered the motion, response, the memoranda of the parties and all supporting documents, the Court finds as follows:

On February 1, 1995, the plaintiff, Alan J. Leddy ("Leddy"), became an insured under the Mississippi State Medical Association Benefit Plan and Trust ("MSMA Plan" or "the Plan") when he was added to the policy as a dependent of his wife, Geraldine Leddy, who was an insured under the Plan. In June of 1995, the plaintiff was hospitalized and had quadruple coronary bypass surgery, for which he made a claim to the Plan for charges in excess of $70,000. The Plan paid $2,000 but denied the balance because the plaintiff's condition was "pre-existing."

The policy includes a provision for pre-existing limitations. Coverage is limited to $2,000 for the first twelve months for preexisting conditions:

If a condition is pre-existing as defined herein, then benefits for charges resulting from a pre-existing condition are limited during the first twelve months that a participant is covered under the Plan. The pre-existing limitations are specified in the Plan specifications.

(Certificate of Insurance, p. 9). At page 12 of the Certificate, "pre-existing condition" is defined as "any condition or ailment, disease or physical condition, including pregnancy, for which an individual had the condition diagnosed or received treatment within twelve months prior to the effective date of the individual's coverage under this Plan."

After the effective date of the policy, and within the first twelve months of coverage, the plaintiff was admitted to Memorial Hospital in Gulfport, Mississippi, where, on June 23, 1995, he underwent quadruple bypass surgery. It was confirmed that the plaintiff had 100% occlusion of the right coronary artery, 99% stenosis of the left interior descending and 99% stenosis of the left circumflex. The plaintiff was suffering from a severe case of coronary artery disease, and the pre- and post-operative diagnoses of the surgeon were "ischemic coronary artery disease." The plaintiff's consulting physician, Dr. Stephen P. Johns, gave an impression of "atherosclerotic coronary vascular disease," and the plaintiff's cardiologist, Dr. Bharat H. Sangani, described the plaintiff's condition as "angina" in the patient's history and physical, as well as in the admitting and discharge summaries.

According to Dr. Sangani (who is designated as an expert by the plaintiff), "angina" is used to describe the discomfort in the chest resulting from a lack of oxygen to the heart muscle. Angina is a manifestation of coronary artery disease. "Ischemia" is used to describe the inadequate oxygenation of the heart muscle, and one of the reasons for ischemia is coronary artery disease. Coronary artery disease is caused by a narrowing of the coronary arteries resulting from a buildup of cholesterol or plaque in the arteries. Dr. Sangani believes that the plaintiff's coronary artery disease was caused by cholesterol deposits. (Sangani Deposition, pp. 12–13). Regardless of whether the angina is characterized as stable or unstable, it is beyond question that the underlying origin is coronary artery disease. (Sangani Depo., pp. 18–19).

Prior to the inception of the policy, the plaintiff had begun having increased chest pains and shortness of breath. On August 18, 1994, the plaintiff was seen and treated by Dr. Johns, a family medical specialist and the plaintiff's primary treating physician. On that occasion, the plaintiff told Dr. Johns that he had been hospitalized in 1982 and 1986 for myocardial infarction and that, since 1987, the "angina has become more frequent with less exertion." On that occasion, Dr. Johns diagnosed "exercise induced angina." Shortly thereafter, on August 24, 1994, Dr. Johns prescribed Inderal LA for the plaintiff. Inderal LA is a beta blocker used to treat angina or coronary artery disease. (Johns Depo., p. 7).

On December 16, 1994, the plaintiff was again seen by Dr. Johns. The plaintiff was complaining of chest pain and shortness of breath on exertion. Again, Dr. Johns diagnosed angina, status post myocardial infarction. On both office visits, Dr. Johns suggested a Persantine Thallium Stress Test, but on neither occasion did the plaintiff undertake such a test because he did not have sufficient funds. (Johns Depo., pp. 5–6).

The defendant contends that it is beyond question the plaintiff had "angina," and that the underlying cause of angina is coronary artery disease. Therefore, the plaintiff had a pre-existing coronary artery disease which was diagnosed and treated on at least three occasions within six months prior to the inception of the policy.

The plaintiff contends, on the other hand, that prior to the inception of the policy he had stable angina, i.e., angina that manifested itself upon exertion or stress; and that after the inception of the policy the angina became unstable, i.e., it manifested itself even without exertion or stress, so that im-

mediate treatment was required to avoid a possible myocardial infarction.

As the defendant points out, angina, whether stable or unstable, is a result of coronary artery disease (clogged arteries). Angina becomes unstable when the arteries become so occluded as to dangerously restrict the blood flow to the heart, posing a threat of plaque breakage or rupture which could cause a sudden stoppage of the blood flow to the heart. The difference in stable angina and unstable angina is the severity of the underlying coronary artery disease. As the defendant's expert, Dr. Mallan G. Morgan, points out in his expert report, attached to his deposition:

> The reality is that myocardial (or heart) ischemia is experienced as a pain or pressure sensation in the chest which is called angina. Therefore, exercise induced chest pain, which when evaluated by a stress test and thallium scan, shows the changes that are characteristic of myocardial ischemia and are subsequently confirmed by evidence of partial obstruction of one or more coronary arteries ar cardiac catheterization is Angina pectoris. Angina Pectoris is the symptom of myocardial ischemia and myocardial ischemia is experienced as Angina.
>
> . . .
>
> The facts are really very simple. Mr. Leddy had heart attacks in 1983 and 1986, but this is not relevant to this case. He did not receive appropriate followup until he started having increasing severity of his angina which represented worsening of the cardiac ischemia he was experiencing. A Persantine thallium scan and subsequent cardiac catheterization documented that his myocardia ischemia was the result of his occlusive coronary artery disease which he felt as chest pain on exertion.
>
> With all my sympathies to Mr. Leddy and his wife, and to his physicians, there is absolutely no question that his symptoms in August of 1994, and December of 1994, as recorded by Dr. Johns, represent myocardial ischemia as manifest by angina pectoris. This is clearly a pre-existing illness as defined by the policy.

(Morgan Report of November 21, 1997, pp. 1–3).

Regardless of the mechanism by which the underlying coronary artery disease proceeded from stable angina to unstable angina, it is beyond dispute that the disease process, that is, the narrowing of the coronary arteries with cholesterol and/or plaque, was diagnosed and treated by Dr. Johns within 12 months prior to the effective date of the coverage. This squarely meets the definition of "pre-existing condition" contained in the Certificate.

Rule 56 of the Federal Rules of Civil Procedure provides that judgment for the moving party "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also South Central Bell v. Canal Place Limited Partnership*, 927 F.2d 867, 868 (5th Cir.1991). This Court affords the plaintiff the benefit of every reasonable doubt as to whether a material issue of fact exists. The Court also requires the defendant to establish that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Policies containing limitations or exclusions for preexisting diseases or conditions are valid and enforceable in Mississippi. *See Ford Life Insurance Co. v. Shannon*, 328 So.2d 342 (Miss.1976); *Insurance Co. of North America v. Deposit Guaranty National Bank*, 258 So.2d 798 (Miss.1972). Such clauses have been construed by the Mississippi cases to require distinct symptoms from which the underlying conditions can be reasonably diagnosed. *See Ross v. Western Fidelity Ins. Co.*, 872 F.2d 665 (5th Cir.1989), further clarified at 881 F.2d 142 (5th Cir. 1989).

In *Blue Cross & Blue Shield of Mississippi v. Mosley*, 317 So.2d 58 (Miss.1975), the Mississippi Supreme Court stated:

> We have held in a number of cases that [pre-existing condition] clauses such as the one in this contract are valid and enforceable, and where, as here, the provisions

are not ambiguous, such clauses will be applied as provided by their plain terms. Therefore, the ailment or disease will ordinarily be deemed to exist when a distinct symptom, ailment or condition manifests itself from which a doctor can with reasonable accuracy diagnose the disease; where, as here, the doctor not only found the ailment or physical condition but actually diagnosed it long prior to the effective date of the insurance contract, no recovery can be had.

*Id.* at 60–61 (citations omitted).

The plaintiff also argues that the denial of his claim by the defendant was based upon a preexisting condition of coronary artery disease instead of angina. While it is undisputed that the plaintiff was diagnosed with "angina" before and after the inception of coverage, the competent medical testimony in this case establishes that "angina," "exercise induced angina" and "angina pectoris" are all terms used to describe the pain caused in an individual who is suffering from coronary artery disease. A diagnosis of "angina," at least in the plaintiff's case, is tantamount to a diagnosis of coronary artery disease.

In the medical practice generally you may use exercise induced angina as a diagnosis because everyone in medicine knows that means one thing. It doesn't mean a variety of things. It means one thing, which is the presence of atherosclerotic cardiovascular disease.

(Morgan Depo., p. 31).

Finally, the plaintiff has not shown a genuine issue of material fact relevant to his allegation that the defendant's denial of his claim was "arbitrary and capricious." The defendant has demonstrated that the entire clinical records were reviewed, and that the denial of benefits was reviewed and upheld by its Benefit Committee, consisting of at least four physicians. No material doubt of the defendant's good faith and prompt handling of this claim has been raised.

The plaintiff has failed to show a genuine issue of material fact, and the Court holds as a matter of law that the defendant's policy provision is unambiguous, and that the plaintiff's claim was for a preexisting condition under the terms of the policy. Accordingly,

IT IS HEREBY ORDERED that the defendant Mississippi State Medical Association's motion for summary judgment **[docket entry no. 21–1]** is GRANTED. A final judgment in conformity herewith shall entered this date, providing that each party bear its own costs.